**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | | |
|---|---|---|---|
| **JOE ELLA WELLS,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **vs.** | ) | | |
| | ) | **Case No.** | **CIV-11-631-M** |
| **MICHAEL J. ASTRUE,** | ) | | |
| **Commissioner of the Social** | ) | | |
| **Security Administration,** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

**FINDINGS & RECOMMENDATION
OF MAGISTRATE JUDGE**

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final

decision of the Commissioner of the Social Security Administration denying her applications for

disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423, and her applications for

supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been

referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C.

§636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter

TR. ___). The parties have briefed their positions and the matter is now at issue. For the reasons

stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

**PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on April 7, 2000 and again on November 6, 2002

(TR. 21). The applications were denied on initial consideration and on reconsideration at the

administrative level (TR. 21-22). After two hearings, an ALJ issued two unfavorable decisions

finding that Plaintiff was not entitled to DIB or SSI (TR. 21). On December 19, 2005 the Appeals

Council consolidated the cases, and remanded them for further proceedings (TR. 21). A

supplemental hearing was held before an ALJ on August 24, 2006 resulting in yet another

unfavorable decision (TR. 22). On May 19, 2008 the Appeals Council again vacated the ALJ's

decision and remanded the cases for further proceedings (TR. 22). A second supplemental hearing was held on August 18, 2009 (TR. 58-123). At the hearing Plaintiff amended her alleged onset date to October 31, 1999 (TR. 22). The Plaintiff appeared in person and with her attorney and offered her testimony in support of the applications (TR. 62-65, 71-74, 75-77, 83-111). A medical expert (ME) testified at the request of the ALJ (TR. 65-71, 74-75, 77-83). A vocational expert (VE) also testified at the request of the ALJ (TR. 111-122). The ALJ issued his decision on November 16, 2009 finding that Plaintiff was not entitled to DIB or SSI (TR. 22-44). The Appeals Council denied the Plaintiff's request for review on April 5, 2011, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 13-15).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted).*

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff

had not engaged in substantial gainful activity from her alleged onset date of October 31, 1999 through December 31, 2004 and from December 31, 2005 through her last insured date of December 31, 2008, so the process continued (TR. 24). At step two, for the period of October 31, 1999 through December 31, 2004, the ALJ found that Plaintiff had the following severe impairments: Status post removal of kidney (1983); status post arthroscopic surgery of the right knee (1991); obesity; hypertension; hyperlipidemia; and diabetes mellitus (TR. 25). Beginning on December 31, 2005, the ALJ also found that Plaintiff had the following additional severe impairment: Status post heart attack with stent placement in 2007, and a hospitalization in April of 2009 for low blood sugar (TR. 37). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 26, 38). At step four, the ALJ found that, for the period from October 31, 2009 through December 31, 2004, Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work (PRW) as a chemical dependency assistant/aid (as actually performed), bookkeeper, clerk, customer complaint clerk, order clerk, and home health aide (TR. 36). Also, at step four, the ALJ found that, for the period beginning December 31, 2005, Plaintiff retained the residual functional capacity (RFC) to perform her PRW as a bookkeeper, a customer complaint clerk, an order clerk, and a home health aide coordinator (TR. 43). Thus, at step four of the sequential analysis the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 44).

## ISSUES PRESENTED

On appeal to this Court, Plaintiff alleges that the ALJ erred by failing to properly evaluate the medical evidence; and that the ALJ erred at step four by failing to perform the proper analysis when determining Plaintiff could perform her PRW.

## MEDICAL EVIDENCE OF MENTAL IMPAIRMENT

In March 2003, Plaintiff underwent a consultative psychiatric evaluation performed by Janet Kates, Ph.D. (psychologist), who observed that Plaintiff had not received treatment for a mental disorder other than being prescribed medication in 1997 by a physician (TR. 482). Dr. Kates assessed Plaintiff as having "Major Depressive Disorder, Single Episode, Moderate" (TR. 484). Dr. Kates found that Plaintiff's reported panic episodes did not meet the "full diagnostic criteria for panic attack" (TR. 484). Dr. Kates also provided an additional diagnosis of "Anxiety Disorder, NOS" (TR. 484).

In April 2003, agency physicians completed a Mental RFC Assessment in which they concluded that Plaintiff was "moderately" limited in her ability to understand, remember and carry out complex instructions; and "markedly" limited in her ability to interact appropriately with the public (TR. 526). Agency physicians explained their conclusions by stating that

> Claimant is able to understand, remember, and carry out simple one-step tasks and some, but not all, more detailed tasks under routine supervision. She is able to complete a normal work day and work week from a mental standpoint, and she can adapt to a work setting. She cannot relate effectively to the general public, but she can relate superficially to coworkers and supervisors for work purposes

(TR. 528).

In December 2008, Plaintiff underwent a consultative psychiatric evaluation performed by Richard H. Swink, Ph.D. (clinical psychologist), who observed that Plaintiff was oriented to date, person, place, and circumstances; that her remote memory functions were intact; and that she gave a "coherent social and other history" (TR. 675). Dr. Swink noted that Plaintiff had taken Amitriptyline for depression for the past five years (TR. 675). Dr. Swink further found that Plaintiff was able to focus attention, comprehend instructions and carry out basic tasks; that her reading level, full scale IQ and verbal IQ and verbal comprehension were at a low average level; and that her performance IQ and perceptual organization were in the "upper borderline" range (TR. 676).

4

Dr. Swink concluded that Plaintiff "evidences significant depressive and anxiety symptoms secondary to a chronic pain disorder" (TR. 676). His diagnostic conclusion was of pain disorder associated with both psychological factors and a general medical condition; adjustment disorder with depressive mood, "moderate", secondary to physical conditions; and panic disorder without agoraphobia (TR. 676-677). Dr. Swink further concluded that Plaintiff's conditions "appear static and likely to continue for the next 12 months" (TR. 677).

Also in December 2008, Dr. Swink completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" (MSS-M) in which he concluded that Plaintiff was "moderately" limited in her ability to understand, remember and carry out complex instructions (TR. 678-680). Dr. Swink also concluded that Plaintiff was "moderately" limited in her ability to interact appropriately with supervisors and co-workers, and in her ability to respond appropriately to usual work situations and to changes in a routine work setting (TR. 678-679). Dr. Swink identified the presence of depressive mood, anxiety and pain disorder as factors that supported his assessment (TR. 649).

## MEDICAL EVIDENCE OF PHYSICAL IMPAIRMENT

In August 2008, Plaintiff underwent a consultative physical examination performed by John A. Saidi, M.D. (family practice), who reported the range of motion in Plaintiff cervical spine was within normal range with some stiffness, but without any significant pain; and that range of motion in her dorso-lumbar spine and hip joints was decreased with pain and stiffness (TR. 660). Dr. Saidi further reported that the results of the physical exam were otherwise normal (TR. 659-660). Dr. Saidi's final impression was that Plaintiff was morbidly obese with a history of type II diabetes mellitus, high blood pressure, coronary artery disease and hyperlipidemia; and that she was status post carpal tunnel release with a history of peripheral neuropathy, diabetic neuropathy and chronic renal disease (TR. 660).

Also in August 2008, Dr. Saidi completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" (MSS-P) in which he concluded that Plaintiff could frequently lift or carry up to 20 pounds; that she could stand and/or walk (with normal breaks) for no more than two hours total in an eight-hour workday; sit (with normal breaks) for only one hour in an eight-hour workday; and could sit continuously for no more than 10 minutes (TR. 663-664). Dr. Saidi further concluded that Plaintiff would be required to lie down for 4 hours during the normal workday to manage pain or other symptoms; and that she could only occasionally reach, handle, push/pull, balance, stoop, kneel, crouch, or crawl; and that she could never climb ladders or scaffolds (TR. 665-666). Dr. Saidi explained his findings by stating that Plaintiff was morbidly obese; that she had decreased range of motion in her spine and hips associated with some pain and stiffness; and that her range of motion in her shoulders and neck were within normal limits but "associated with stiffness" (TR. 664-665).

At the August 2009 supplemental hearing, the ME testified that he agreed with Dr. Saidi's examination, but could find no explanation why Dr. Saidi found she "could climb ladders, balance, occasionally, stoop, kneel and so forth" (TR. 77-78). The ME also could find no explanation in Dr. Saidi's examination or Plaintiff's history which would "limit her sitting and standing to five minutes at a time" (TR. 78).

## ANALYSIS

### I.    The ALJ's Evaluation of the Medical Evidence.

Plaintiff argues that the ALJ failed to properly analyze the opinions of the consulting physicians, Drs. Kates, Swink, and Saidi (See Plaintiff's Brief at pages 3-9).

Plaintiff first argues the ALJ improperly disregarded the opinions of the consultative psychiatric examiners, Dr. Kates and in particular the opinion of Dr. Swink, that Plaintiff had "moderate" limitations in her ability to understand, remember and carry out complex instructions; to interact appropriately with supervisors and co-workers; and to respond appropriately to usual

work situations and to changes in a routine work setting (See Plaintiff's Brief at pages 3-4) (TR. 678-679). Plaintiff also argues that the ALJ erred in disregarding the opinion of agency physicians that Plaintiff was "markedly" limited in her ability to interact appropriately with the public (See Plaintiff's Brief at page 6) (TR. 526). In addressing these opinions the ALJ correctly observed that Plaintiff, after her alleged onset date of October 31, 1999, worked at a particular job in customer service (catalog sales), and at another job dealing with the general public, noting that the ability to perform this work is evidence the claimant retains the "ability to interact socially, and the ability to respond to usual work changes" (TR. 35, 39).  In assigning "no weight" to the opinions of Dr. Swink and the agency physicians, the ALJ also observed that the "claimant admitted at the hearing that she would have been able to continue working as a chemical dependency aid had she not been laid off work. This position included working with the public and was semi-skilled work" (TR. 40). The ALJ also reasoned in his decision that

> Considering the limited mental health treatment, and because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, they are not "severe"

(TR. 40) 20 C.F.R. §404.1520a(d)(1). In assigning "no weight" to the opinions of the consultative medical examiners, the ALJ further observed that "evidence in the file reveals that the claimant had "mild restriction of activities of daily living, "mild" limitations in social functioning, in that she was able to socialize at home and at work, and "mild" limitations in concentration, persistence, and pace" (TR. 40). Thus, it appears that the ALJ properly rejected the opinions of the consultative examiners and agency physicians.

Plaintiff also urges that the ALJ erred in evaluating the August 2006 opinion of a treating source, McKinley Boatner, a physicians' assistant (PA) at Mary Mahoney Memorial Health Center (Mary Mahoney) (See Plaintiff's Brief at pages 9-12). 20 C.F.R. §404.1513 defines acceptable medical sources as those

> Sources who can provide evidence to establish an impairment. We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s). See § 404.1508. Acceptable medical sources are--(1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only;…
>
> Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--(1) Medical sources not listed in paragraph (a) of this section (for example, nurse- practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);

20 C.F.R. §404.1513(a)(1-2) & (d)(1). The record fails to demonstrate that McKinley Boatner was anything other than a PA (TR. 537-538).  Thus, the ALJ was not required to accord Mr. Boatner's opinions the weight given to the opinions of a treating physician. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (ALJ properly rejected chiropractor's report which the regulations provide are not entitled to the same significant weight as reports by a physician).

SSR 06-03p instructs the ALJ to explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). In his decision the ALJ specifically mentions the opinions expressed by Mr. Boatner in a medical source statement which found that Plaintiff had an RFC for less than sedentary work (TR. 19). The ALJ also noted that Plaintiff had

> The physician's assistant's conclusions are inconsistent with the testimony of the medical expert at the hearing. Additionally, the conclusions are inconsistent with the progress notes from Mary Mahoney. The claimant was being treated for her diabetes condition. There is no evidence of any treatment for the other conditions. The claimant was not prescribed any pain medication for

> her musculoskeletal complaints nor was she referred to an orthopedic specialist. The Administrative Law Judge considered the evidence from the physician's assistant but assigned greater weight to the opinions of the non-examining State agency physicians and to the medical expert at the hearing

(TR. 43). Thus, the ALJ provided an adequate discussion of the opinions of McKinley Boatner, P.A., which allows this reviewer to follow the adjudicator's reasoning (TR. 43).

Plaintiff also argues that the ALJ erred in failing to find that Plaintiff's mental impairment was a severe impairment at step two (See Plaintiff's Brief at pages 5-6). Step two of the Sequential Evaluation Process, is governed by the Secretary's "severity regulation." *Bowen v. Yuckert*, 482 U.S. 137,140-41 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The "severity regulation" provides that:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Secretary] will find that you do not have a severe impairment and are, therefore, not disabled. [The Secretary] will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). Pursuant to this regulation, claimant must make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." *Williams*, 844 F.2d at 751. This threshold determination is to be based on medical factors alone. Vocational factors, such as age, education, and work experience, are not to be considered. *Bowen*, 482 U.S. at 153; *Williams*, 844 F.2d at 750. The mere presence of a condition, by itself, does not meet the burden of proof at step two; instead, the severity of an impairment is measured by its impact on the claimant's ability to work. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1520(b). These abilities and aptitudes include the following:

> (1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2)     Capacities for seeing, hearing, and speaking;

(3)     Understanding, carrying out, and remembering simple instructions;

(4)     Use of Judgment;

(5)     Responding appropriately to supervision, co-workers and usual work situations; and

(6)     Dealing with changes in a routine setting.

20 C.F.R. § 404.1521(b).

Plaintiff's burden on the severity issue is *de minimis*. *Williams*, 844 F.2d at 751. As the

United States Supreme Court explains, the Secretary's severity regulation

> increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are **so slight** that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.

*Bowen*, 482 U.S. at 153 (emphasis added).  The Secretary's own regulations state that

> [g]reat care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued.

Social Security Ruling 85-28 (1985).  In other words, step two "is an administrative convenience

[used] to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v.*

*Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) (quoting *Farris v. Secretary of HHS*, 773

F.2d 85, 89 n. 1 (6th Cir. 1985)).

The record fails to show that Plaintiff sought or received ongoing psychiatric treatment for

a mental impairment (TR. 29, 30, 481, 482, 484). Plaintiff reported that her panic attacks had not

interfered with relationships or work situations (TR. 29, 484). Thus, the ALJ correctly observed

that Plaintiff failed to meet his *de minimis* burden of showing that her mental impairment was a

severe impairment at step two of the sequential evaluation process.

Accordingly, it appears that the ALJ did not err in his analysis of the medical evidence.

## II.   The ALJ's Step Four Analysis.

Plaintiff alleges that the ALJ erred by failing to conduct a proper analysis at step four (See Plaintiff's Brief at pages 12-15). At step four, Social Security Regulation 82-62 requires an ALJ to develop the record with respect to a claimant's PRW.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.
> . . . .
> [D]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate.   This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source.   Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

Soc. Sec. Rep. Serv., Rulings 1975-1982, SSR 82-62 (West 1982). The ALJ must make specific factual findings detailing how the requirements of claimant's PRW fit the claimant's current limitations. The ALJ's findings must contain:

> 1.   A finding of fact as to the individual's RFC.
> 2.   A finding of fact as to the physical and mental demands of the past job/occupation.
> 3.   A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62; *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994); *Henrie v. United States Dep't of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993).

Here, the ALJ found that Plaintiff had the RFC to perform a full range of sedentary work beginning December 31, 2005 (TR. 41). The ALJ's RFC assessment is supported by substantial evidence. Plaintiff claims that the ALJ erred by not making specific findings regarding specific

demands of her PRW as a customer service complaint clerk, order clerk, and home health

coordinator (See Plaintiff's Brief at page 12).  As to Plaintiff's PRW the ALJ found

> In comparing the claimant's residual functional capacity with the
> physical and mental demands of this work, the undersigned finds
> the claimant is able to perform it as actually performed

(TR. 44). In addition to the testimony of the VE the ALJ relied upon the work history provided by

the Plaintiff (TR. 408-415, 422-429). The ALJ stated that he considered all evidence in the record

and the record contains substantial evidence of the physical demands of Plaintiff's PRW (TR. 35,

36, 43-44). The ALJ was not required to specify the mental demands of Plaintiff's PRW because

he found Plaintiff's mental impairment to be non-severe (TR. 40).

In support of his position, Plaintiff cites *Winfrey v. Chater* 92 F.3d 1017 (10th Cir. 1996).

While instructive on the responsibilities of an ALJ at step four, the undersigned finds that *Winfrey*

is not dispositive. In *Winfrey*  the ALJ failed to include all of Plaintiff's exertional limitations in his

RFC finding and failed to develop the record on, and to make the required findings about, the

mental demands of Plaintiff's PRW. *Winfrey* at 1025. This failure infected the third phase, where

the ALJ abdicated his fact finding and evaluation responsibilities to the VE. *Winfrey*  at 1025. In

the present case, the ALJ included in the RFC all of Plaintiff's limitations which were supported by

substantial evidence, and made all of the necessary findings to support his step four analysis (TR.

43-44). In accordance with *Winfrey,* the ALJ himself made the required findings on the record,

including his own evaluation of the claimant's ability to perform her PRW (TR. 44). SSR 82-62;

*Winfrey* at 1025.

The ALJ's reliance on the testimony of the VE was proper only because his questions to

the VE included all of the limitations established by substantial evidence and because the ALJ

made his own specific findings (TR. 111-114, 117-118, 43-44). While the ALJ may rely on

information supplied by the VE at step four, the ALJ himself must make the required findings on

the record, including his own evaluation of the claimant's ability to perform his PRW. SSR 82-62;

*Winfrey* at 1025. It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the VE, because in such cases, "the remainder of the step four assessment takes place in the VE's head" and "we are left with nothing to review." *Winfrey* at 1025.

In this case the ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of his step four analysis (TR. 43-44). An "ALJ may rely on information supplied by the VE at step four." *Winfrey* at 1025. The ALJ's findings were adequate here to satisfy the step four requirements articulated in *Winfrey. See Doyle v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003).

Plaintiff next argues that the ALJ should have determined whether Plaintiff could perform the requisite physical and mental activities on a full-time, sustained basis, citing *Sisco v. U.S. Dept. of H. & H. Serv.*, 10 F.3d 739, 745 (10th Cir. 1993) (See Plaintiff's Brief at page 14). As suggested by the Commissioner, Plaintiff's reliance on *Sisco* is misplaced and there is no requirement imposed that an ALJ make a specific finding regarding full-time work in every case (See Defendant's Brief at page 23). Likewise, Plaintiffs arguments that the ALJ failed to determine the maximum amount of each work-related activity that Plaintiff could perform; and that the ALJ's failed to link the medical evidence to Plaintiff ability to perform work on a sustained based, are both without merit. The ALJ's decision contains a detailed and meaningful step four discussion and his RFC findings are supported by substantial evidence (TR. 31-37, 41-44).

Thus, it appears that the ALJ's step four analysis and his determination that Plaintiff was capable of performing her PRW are supported by substantial evidence.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcripts of the administrative hearings, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **July 9, 2012**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on June 18, 2012.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

14